Paul A. Grammatico (SBN 246380)
paul@grammaticolawoffice.com
**GRAMMATICO LAW FIRM**
655 N. Central Ave., 17th Floor
Glendale, CA 91203
Telephone: (310) 245-1804

*Attorneys for plaintiff*
*Christina Tartaglia*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA TARTAGLIA, an individual,<br><br>          Plaintiff,<br><br>     vs.<br><br>GREENSKY OF GEORGIA, LLC, a Georgia Limited Liability Company,<br><br>          Defendant. | Case No. 8:23-cv-01029-FWS-DFM<br><br>Hon. Fred W. Slaughter<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF:**<br><br>1. **VIOLATIONS OF THE CALIFORNIA CONSUMER REPORTING AGENCIES ACT**<br><br>2. **VIOLATIONS OF THE ROSENTHAL FAIR DEBT COLLECTIONS PRACTICES ACT**<br><br>Complaint Filed: June 12, 2023 |

1
First Amended Complaint

Christina Tartaglia ("Plaintiff"), by and through undersigned counsel, hereby complains as follows.

## I. INTRODUCTION

1. This action arises out of Greensky of Georgia, LLC's ("Greensky" or "Defendant") violations of the California Consumer Credit Reporting Agencies Act ("CCRAA") and the California Rosenthal Fair Debt Collection Practices Act ("RFDCPA").

2. Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendant in connection with its inaccurate, misleading, and/or incomplete furnishing of credit reporting information on Plaintiff's account with Defendant.

3. Plaintiff seeks further redress for the unlawful and deceptive practices committed by the Defendant in connection with misleading, inaccurate, and/or false statements it made to Plaintiff in its attempt to collect a debt from Plaintiff, including its attempts to collect the debt after the account had already been satisfied in full.

4. Since on or about April of 2022, Defendant has been furnishing and continues to furnish inaccurate information to credit reporting agencies regarding Plaintiff's account with defendant, including that the debt has been "charged off", and that Plaintiff owes a balance of $3,381 on this account.

5. Defendant's reporting that the debt is "charged off" and has a balance owing is false, and Defendant had and currently has a reason to know it was false.

6. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

## II.  JURISDICTION AND VENUE

7. Plaintiff is, and was at all times hereinafter mentioned, a resident of Orange County, California, which is within the Central District of California.

8. Defendant at all times relevant hereto was a Georgia limited liability company regularly doing business in the State of California as lender, credit servicer, and credit furnisher, and regularly engaged in collection of its own debts.

9. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because the Plaintiff resides in, and the injury occurred in Orange County, California, and Defendant does business in California.

10. Personal jurisdiction exists over Defendant because Plaintiff resides in California, Defendant has the necessary minimum contacts with the state of California, and this suit arises out of specific conduct with Plaintiff in California.

11. The Court has jurisdiction under 28 U.S.C. §1332 because Plaintiff is a citizen of the State of California and Defendant is a citizen of the State of Georgia and the amount in controversy exceeds $75,000, exclusive of interest and costs. Specifically, Plaintiff alleges on information and belief that all of the members of Defendant, an LLC, are citizens of Georgia. "[A]n LLC is a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Properties Anchorage*, LP, 437 F. 3d 894, 899 (9th Cir. 2006).

12. At all times pertinent hereto, Defendant was a "person" as that term is defined in Cal. Civ. Code § 1788.2(g), and also a "furnisher" of credit information as that term is described in 15 U.S.C. §1681s-2 et seq.

13. At all times pertinent hereto, Defendant was engaged in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. §1692a(5) and Cal. Civ. Code § 1788.2(d).

14. Defendant is a "debt collector" as defined by Cal Civ. Code § 1788.2(c).

### III.   FACTUAL ALLEGATIONS

15.   Plaintiff alleges that all actions alleged herein by Defendant were done knowingly, intentionally, and in reckless disregard for accurate credit reporting and lawful debt collection.

16.   In the alternative Plaintiff alleges that each and every of Defendant's actions was the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting, and unlawful debt collection practices.

17.   In early 2018, Plaintiff, along with her then husband, took out a loan in the approximate amount of $40,000.00 with Defendant to finance the construction of a swimming pool at her home ("Swimming Pool Loan"), located at 1518 South Dallas Drive, Anaheim, California 92804 ("Anaheim Property").

18.   On or around February of 2022, Plaintiff was informed by her now ex-husband ("Former Spouse") that he intended to separate from her.

19.   At that time, Former Spouse was responsible for paying all of their expenses, including payments to Defendant, because Plaintiff had been laid off from her work due to the pandemic.

20.   Following the separation from Former Spouse, Plaintiff noticed that Former Spouse had begun failing to make timely payments to their joint accounts.

21. Upon learning of this, Plaintiff immediately began looking for full-time work in order to support herself and her son, and in order to be responsible in keeping current with her pending obligations.

22.   Plaintiff struggled to find full-time work sufficient to support herself and her son, and even was forced to apply for food stamps—for which she was denied on the basis that her income was over the required limit.

23. In February 2022, Plaintiff secured a full-time, salaried position, and was relieved that she could begin to repair her credit and dig herself out of the financial hole that had resulted from her separation from Former Spouse.

24. On or about April of 2022, during the process of extricating herself financially from Former Spouse, Plaintiff and Former Spouse sold the Anaheim Property.

25. On or about April 15, 2022, and prior to the close of escrow, in the hope of settling her outstanding debts and beginning a fresh start, Plaintiff called Defendant to inquire about the balance on her account—even though she was aware that the debt had already been charged off.

26. During that call, Plaintiff was given a payoff amount of $29,426.10 ("First Payoff Statement"). Plaintiff was not informed during that call that there was any contingency regarding the $29,426.10 figure, or that there was any possibility that the figure was inaccurate or subject to pending transactions.

27. Plaintiff was determined to satisfy her existing obligations and begin a fresh start. Toward that end, on or about April 25, 2023, she paid the First Payoff Statement in full out of the close of escrow of the sale of the Anaheim Property, which is to say that the entire amount of the First Payoff Statement was paid directly from the escrow company to Defendant.

28. After selling the Anaheim Property and paying off the Swimming Pool Loan in full based on the First Payoff Statement provided to her, Plaintiff thought—and had no reason to think otherwise—that she was finally in a position to start catching up on her finances and repairing her credit.

29. From that point forward, she was diligent in making timely payments on her financial obligations, often paying more each month than the minimum payment required. She also obtained the Credit Karma Application on her phone to

monitor her credit—which never indicated that Defendant, inexplicably, was still furnishing derogatory information to credit reporting agencies.

30. On or about January of 2023, Plaintiff was in the process of seeking to purchase a new residence, when she was informed by a loan officer that Defendant was still furnishing negative information on her credit report, erroneously claiming that she still owed them money even though she had satisfied the First Payoff Statement in full.

31. Plaintiff experienced a high degree of emotional distress, anger, frustration, and anxiety upon learning that Defendant was inaccurately furnishing information regarding the now-satisfied Swimming Pool Loan. Plaintiff now understood why her credit was not improving despite her diligent efforts. This information angered and disturbed her, as she had been working hard to repair her credit score and improve her financial situation—only to see it tarnished by reckless and inaccurate conduct and/or policies by Defendant.

32. Despite timely paying the entire First Payoff Statement—which is the exact amount Defendant communicated to Plaintiff that she owed based on Defendant's own calculations—Defendant inexplicably continued to furnish information to credit reporting agencies that Plaintiff still had a balance owing on the account and that the account had been "charged off."

33. Plaintiff alleges on information and belief that the First Payoff Demand of $29,426.10 was communicated to her both verbally over the phone and in writing.

34. Because Plaintiff satisfied the First Payoff Demand in full, Defendant had actual knowledge that the account had been paid as agreed and was fully satisfied, as Defendant told Plaintiff the specific amount to pay, and Plaintiff then promptly paid it.

35. Despite knowing full well that Plaintiff's account had been paid in full, Defendant continued and continues to furnish information to credit reporting

agencies indicating—falsely—that there remains a balance owing and that the account was "charged off."

36. Such reporting is wholly inaccurate, misleading, and adversely affects Plaintiff's credit worthiness.

37. On or around this time, Plaintiff was attempting not only to purchase a new home, but was exploring rental options so she could move out of her residence. Unfortunately, she was prevented from moving out of her residence and securing a new lease because most landlords she encountered within Orange County required a minimum credit score of 700—which could not be achieved because of Defendant's knowingly false reporting.

38. Further, because Plaintiff knew that she could not secure a new lease without improving her credit score, she was scared to pull her credit report to check her score—which she had been informed could result in an "inquiry" showing up on her report and therefore make her credit score worse.

39. Because of Defendant's false reporting, Plaintiff was forced to stay in her current lease, a location with which she is unhappy, further contributing to her emotional distress, anger, anxiety, and frustration. In addition, her rent in her current lease recently went up by $300—another expense that could have been avoided but for Defendant's reckless conduct.

40. Plaintiff has suffered actual damages and adverse credit actions as a result of Defendant's misreporting information on her account. Such damage includes, but is not limited to:

- Plaintiff applied for a credit card with Amazon on or about October of 2022, but was denied due to her credit score.
- Plaintiff was denied multiple opportunities to apply for a new apartment due to her low credit score—forcing her to maintain her current lease, and depriving her of the opportunity to relocate from a place where she is unhappy.

- Plaintiff has been denied multiple opportunities to purchase a new home because of her credit score, which requires her to put a greater down payment (which she cannot afford) in order to lower her projected monthly payment.
- Plaintiff has wasted hours corresponding with loan brokers, credit reporting agencies, Defendant, and attorneys trying to determine why her credit score is not improving and why Defendant is falsely maintaining that she owes them money when she paid the exact amount of money they demanded from her.
- Plaintiff has been forced to incur attorneys' fees, court costs, and other associated litigation fees and costs in order to ensure that her credit report is corrected.
- Plaintiff has suffered substantial emotional distress because of the ordeal that Defendant has put her through at a vulnerable time in her life, which includes anxiety, emotional distress, embarrassment, humiliation, anger, and frustration.

41. When Plaintiff contacted Defendant to inform them of their obvious mistake, Defendant refused to correct it—rather, Defendant doubled-down on their mistake, sending her a second payoff statement after she had already paid off the first ("Second Payoff Statement").

42. The Second Payoff Statement claims—again, falsely—that Plaintiff owed an additional $3,380.56. A true and correct copy of the Second Payoff Statement is attached hereto as Exhibit A.

43. The Second Payment Statement confirms that Defendant's reprehensible conduct in violating Plaintiff's rights was willful—as Defendant was presented **before** this lawsuit with the option of correcting a clear mistake and recalcitrantly reused to do so, either because they were incapable of doing so based on their reckless policies or because they electively chose to continue violating

Plaintiff's rights. Plaintiff was thereafter forced to waste additional time and procure counsel in order to correct Defendant's errors.

44. The Second Payoff Statement falsely states that Plaintiff owes additional money on a debt she had already satisfied in full after she already paid $29,426.10 in response to the First Payoff Statement.

45. In addition to the false statements in the Second Payoff Statement, Defendant has made additional false and deceptive statements to Plaintiff in its attempt to collect a debt from her. For example, in an email from Defendant's customer service department on March 13, 2023, Defendant in fact ***admitted*** that it sent Plaintiff a payoff demand of $29,426.10, which Plaintiff satisfied. In this same email, Defendant contends—again falsely—that "the balance of $3,380.56 remains owing on the account and by law has to be reported." A true and correct copy of the March 13 2023, email is attached hereto as Exhibit B.

46. Defendant's email to Plaintiff not only falsely represents that Plaintiff still owes money to Defendant, but it also falsely states that Defendant is required "by law" to report inaccurate information. That is a false and deceptive statement of the law designed to compel Plaintiff pay money that she does not owe—and it *per se* violates the RFDCPA.

47. To date, Defendant refuses to update its credit reporting, willfully violating Plaintiff's rights repeatedly and with a reckless disregard for the truth or the consequences of its actions.

48. Third parties have now been exposed to the inaccurate tradelines because of Defendant's inaccurate reporting, and third parties continue to be exposed to Defendant's false reporting.

49. As a result of Defendant's inaccurate reporting and false statements, Plaintiff has suffered economic loss, diminished credit worthiness, and emotional harm.

50. In addition, Plaintiff's fresh start has been irreparably harmed and continues to be harmed by Defendant's reporting as that reporting has been disclosed and disseminated to various third-party lenders.

51. Until Defendant's inaccurate reporting is remedied, Plaintiff continues to appear as a severe credit risk.

## FIRST CLAIM

## Violation of California Consumer Credit Reporting Agencies Act

## California Civil Code § 1785.25(a)

52. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

53. In the regular course of its business operations, Defendant routinely furnishes information to credit reporting agencies pertaining to transactions between Defendants and Defendants' consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

54. Defendant has transmitted and continues to transmit inaccurate information regarding Plaintiff's account. In particular, Defendant continues to furnish information to credit reporting agencies that Plaintiff still has a balance owing on her account and that the account has been "charged off."

54. Plaintiff alleges that Defendant's inaccurate reporting has violated and continues to violate California Civil Code § 1785.25(a).

55. Plaintiff alleges that Defendant knows and has reason to know that the information it is furnishing regarding Plaintiff is misleading, inaccurate, and incomplete—because, according to Defendant's own records, Plaintiff paid the exact amount demanded by Defendant, and yet Defendant still maintains that Plaintiff owes money

56. Defendant's communication of false information and erroneous reporting was done and is being done knowingly, intentionally, and in reckless disregard for its duties as a furnisher and Plaintiff's rights.

57. As a direct and proximate result of Defendant's willful and untrue communications, Plaintiff has suffered actual damages including but not limited to time wasted reviewing reports with counsel and attempting to correct inaccurate information, diminished credit score, actual denial of credit applications, lost credit opportunities, including opportunities to secure a new lease or purchase a new home, attorneys' fees and associated litigation expenses, emotional distress, frustration, and such further damages and expenses in an amount to be determined at trial, in excess of $75,000.00.

## SECOND CLAIM

### Violations of the Rosenthal Fair Debt Collection Practices Act

### Cal Civ. Code § 1788.17

58. Plaintiff re-alleges and reaffirms the above paragraphs 1-57 as though fully set forth herein.

59. Defendant violated the RFDCPA at Cal. Civ. Code § 1788.17 as a debt collector collecting or attempting to collect a consumer debt, including (but not limited to) by failing to comply with the provisions of 15 U.S.C. § 1692e(2)(a) (misrepresenting "the character, amount, or legal status of any debt") and 15 U.S.C. § 1692e(10) ("The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.").

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38, Plaintiff hereby demands a trial by jury for all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks a reasonable and fair judgment against Defendant as follows for noncompliance with the CCRAA and RFDCPA as follows:

    A.    Adjudging Defendant violated California Civil Code section 1788.17.

    B.    Statutory damages pursuant to California Civil Code section 1788.30(b) in the amount of $1,000.00 for a willful violation of the statute.

    C.    Actual damages to be proven at trial pursuant to California Civil Code section 1788.30(b).

    D.    Statutory and actual damages pursuant to California Civil Code section 1785.31(a).

    E.    An award of punitive damages for willful conduct in order to deter further unlawful conduct pursuant to California Civil Code section 1785.31(a)(2)(B).

    F.    The costs of instituting this action together with reasonable attorneys' fees and costs incurred in this action pursuant to California Civil Code section 1788.30(c).

    G.    Attorneys' fees and costs of suit incurred herein pursuant to California Civil Code section 1785.31(d).

    H.    Preliminary and permanent injunctive relief to stop Defendant from engaging in the conduct described above.

    I.    Any further legal and equitable relief as the court may deem just and proper in the circumstances.

DATED: July 18, 2023        **GRAMMATICO LAW FIRM**

        By *\_/s/ Paul A. Grammatico\_*
           Paul A. Grammatico
           Attorneys for plaintiff Christina Tartaglia

# CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2023, I served the foregoing **FIRST AMENDED COMPLAINT** by electronic mail to Defendant's counsel in this matter as follows:

Sean W. Fleming, Esq.
**MCDONALD DEVIN MADDEN KENEFICK HARRIS**
12770 Coit Road, Suite 1100, Dallas TX 75251
214.651.3383
SFleming@macdonalddevin.com

*/s/ Paul A. Grammatico*
Paul A. Grammatico

Attorneys for plaintiff Christina Tartaglia